UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA RAILA, | |
| Plaintiff, | No. 19 C 7580 |
| v. | Judge Thomas M. Durkin |
| COOK COUNTY OFFICERS ELECTORAL BOARD, et al., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Andrea Raila and seven of her supporters for the 2018 Democratic primary election for Cook County Assessor bring this action against the Cook County Officers Electoral Board, its members Karen Yarborough, Dorothy Brown, and Kimberly Foxx, an unnamed Cook County Hearing Officer (the "Cook County Defendants"), the Chicago Board of Election Commissioners, and its members Marisel Hernandez, William Kresse, and Jonathan Swain (the "Chicago Defendants").[1] Plaintiffs contend that Defendants violated their due process rights (Count I) and rights to vote and of association (Count II) in the leadup to the primary. The Cook County Defendants moved to dismiss Plaintiffs' claims. R. 19. For the following reasons, that motion is granted. The Court also *sua sponte* dismisses this action against the Chicago Defendants.

---

[1] Raila is the only plaintiff named in the case caption but the complaint states that this action is also brought on behalf of seven voters. This is discussed in more detail below.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

A. Facts

In December 2017, Plaintiff Andrea Raila filed her nominating petitions to be placed on the Democratic primary ballot for the Office of the Cook County Assessor.

R. 27 ¶ 12.[2] Raila submitted 23,357 signatures, far more the 8,236 required for ballot placement. *Id.* ¶¶ 15-16. One week later, objectors challenged the validity of Raila's signatures, alleging improper circulator residency and fraud. *Id.* ¶¶ 13, 18. The Cook County Officers Electoral Board assigned Christopher Agrella to hear Raila's case. *Id.* ¶ 14. Following a two-week records examination, the Cook County Clerk determined that Raila had submitted 14,138 acceptable signatures. *Id.* ¶ 16. Raila's name was printed on paper and electronic ballots pending an ongoing evidentiary hearing to address the remaining objections (this was necessary so that the ballots would be ready for the election). *Id.*

The evidentiary hearing included 16 days of evidence and lasted intermittently from December 19, 2017 to February 15, 2018. *Id.* ¶ 18. Raila alleges that the hearing had multiple procedural irregularities. First, Agrella allowed the objectors unlimited time to present their case while providing Raila only two days. *Id.* ¶ 19. Second, much of the objectors' case relied on an affidavit from Douglas Martin, a "prolific circulator" for Raila, stating that he did not circulate signature sheets and did not sign his sheets in front of a notary. *Id.* Raila introduced a second affidavit from Martin stating that the objectors' affidavit was false. *Id.* Agrella, however, refused Raila's request to allow Martin to testify to explain the discrepancy. *Id.* Agrella also denied Raila's request to have an objector testify who had told the Cook County Board of Elections that she was unaware her name was on the objector list. *Id.* ¶ 20.

---

[2] The complaint is disorganized and at points presents facts in a non-chronological order. The facts included are the Court's best attempt to discern the narrative set forth.

3

Following the hearing, and based almost exclusively on the affidavits, Agrella struck 8,471 of Raila's signatures due to fraud, putting Raila below the 8,236-signature requirement. *Id.* ¶ 23. This included striking every petition sheet notarized by a notary who had notarized any of Martin's sheets, which caused Raila to lose over 7,000 signatures. *Id.*

On February 15, 2018, the Cook County Officers Electoral Board adopted Agrella's report and recommendation and determined that votes for Raila would not count. *Id.* ¶ 24. Five days later, Raila appealed the Board's decision to the Circuit Court of Cook County. *Id.* ¶ 25. Meanwhile, early voting began on February 21. *Id.* On February 27, the Circuit Court upheld the Board's ruling and approved the distribution of green voter notices and wall posters at early voting locations stating that votes for Raila would not be counted. *Id.* ¶ 26.

On March 1, the Illinois Appellate Court denied Raila's motion to stay to prevent the notices from being distributed pending its review. *Id.* ¶ 27. The Cook County Board subsequently ordered 1 million of the green notices and mailed an additional 40,000 absentee voter notices stating that votes for Raila would not count. *Id.* ¶¶ 27, 28.[3] The Cook County Clerk also posted a video to his public Facebook page of him holding a green notice. *Id.* ¶ 17. Meanwhile, the Chicago Board of Election Commissioners placed ads in two free weekly papers with large circulations stating that votes for Raila would not be counted. *Id.* ¶ 29.

---

[3] The complaint states that the "Board of Election Commissioners" ordered the voter notifications and that the "Board of Elections" mailed the absentee notices. The Court assumes that these are both references to the Cook County Officers Electoral Board.

4

On March 14, six days before the primary, the Illinois Appellate Court unanimously overturned the Cook County Board's decision, holding that Agrella erred by not allowing Martin to testify and by giving inordinate weight to the affidavits. *Id.* ¶ 30. The court concluded that the Board's decision that the objectors proved fraud by clear and convincing evidence was clearly erroneous and that votes for Raila should count. *Id.* The next day, the Circuit Court denied Raila's motion for remedial measures in which she argued that she had been denied due process when the notices and wall posters were sent to polling locations, when absentee voter notices were mailed, and when ads had been placed in the weekly newspapers. *Id.* ¶ 32.

Following the Appellate Court's decision, the "Election Authorities"[4] ordered new notices without Raila's name on the list of candidates for whom votes would not count. *Id.* ¶ 31. However, there was an insufficient supply of these new notices, instructions were not sent to election judges to remove the original green notices from election supply boxes, and the Cook County Clerk did not post an updated message on his Facebook page. *Id.* On the eve of the primary, an election judge told Raila that the original green notices were still included in the election supply boxes. *Id.* ¶ 34. Raila called the Cook County Clerk, who told her that emails would be sent to election judges instructing them to hand out the updated notices, and that the Chicago election boxes may have the same problem since they had worked together to

---

[4] The Court assumes that "Election Authorities" refers jointly to the Cook County Board and the Chicago Board.

assemble them. *Id.* Raila called the Chicago Board of Elections' executive director and communications director, who told her that a text message would be sent to all election judges to distribute the updated notices. *Id.* At 6:00 a.m. on election day, the Chicago Board sent text messages erroneously instructing election judges to give voters the original green notices. *Id.* The Board did not send corrected text messages until 11:00 a.m. and 1:00 p.m. *Id.* Following the primary, "Election Authorities" held a press conference to announce that the election system had failed Raila as a result of the error. *Id.* ¶ 36.

Plaintiffs filed this action for violations of their due process rights (Count I) and their rights to vote and of association (Count II).[5]

## Analysis

### I. Due Process (Count I)

In Count I, Raila alleges that her due process rights were violated when the Cook County Officers Electoral Board (1) struck entire signature sheets based on notarial fraud without giving notice of this "irregular change in practice;" and (2) used Douglas Martin's affidavit to strike 7,000 signatures without allowing Raila to call Martin as a witness. R. 27 ¶¶ 38-40.

---

[5] In the response to the Defendants' motion to dismiss, Plaintiffs withdrew their equal protection claim. Plaintiffs also withdrew their claim against Agrella, replaced David Orr with Karen Yarborough in her official capacity as Cook County Clerk, and dropped their claim for money damages. Moreover, and as discussed in more detail below, based on the response it appears that the remaining claims are only brought on Raila's behalf.

Although the parties do not raise the issue, the Court first considers whether res judicata precludes Raila's claim. *See Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (court may raise res judicata if basis for its application is disclosed in the complaint). Claim preclusion has three requirements under Illinois law: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies." *Rose v. Bd. of Election Comm'rs for City of Chicago*, 815 F.3d 372, 374 (7th Cir. 2016). The Court must also consider whether plaintiff had a full and fair opportunity to litigate in the prior proceeding. *Id.* at 376.

The Appellate Court's reversal of the Cook County Board constitutes a final judgment on the merits rendered by a court of competent jurisdiction and thus the first element is satisfied. *See Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002). The third element, identity of parties or their privies, is also met. Raila, the Cook County Officers Electoral Board, and the Chicago Board of Election Commissioners were all parties in the Appellate Court's review.[6] As to Raila's supporters, who were not parties in the state proceedings, it is unclear the extent to which they are intended to be parties in this lawsuit. The case caption names only Raila, and the complaint alleges a violation of only Raila's due process rights. While Count II alleges that "the right to vote of [Raila's] supporters was injured," *id.* ¶ 44,

---

[6] *See Raila v. Cook Cnty. Officers Electoral Bd.*, No. 1-18-0400 (Mar. 4, 2018) (unpublished order under Illinois Supreme Court Rule 23). The Court may take judicial notice of state court decisions in ruling on a motion to dismiss. *520 S. Michigan Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008).

7

the response to the motion to dismiss does not mention the voters even once. The Court thus assumes that Plaintiffs have waived Count II to the extent it relates to the voters' constitutional rights, if a claim was ever intended at all.

But even assuming the claim is also brought on the voters' behalf, under Illinois law "privity exists between 'parties who adequately represent the same legal interests.'" *Lawrence v. Bd. of Election Comm'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1022 (N.D. Ill. 2007) (quoting *Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992)). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Id.* (quoting *Burris*, 602 N.E.2d at 826). The Court sees no reason why Raila did not adequately represent her voters' legal interests in challenging the Board's decision to remove her from the ballot and seeking relief from the distribution of the relevant information in state court. *See id.* (finding candidate adequately protected his supporters' interests in state court review of Board of Election Commissioners' decision for purposes of claim preclusion in subsequent federal suit). Indeed, as the candidate, Raila had an even greater interest in raising these issues. *Id.* That Raila adequately represented the voters' legal interests in state court is evidenced by the fact that the response to the motion to dismiss in this case makes no distinction between Raila's and the voters' claims (again, to the extent the voters are intended to be included in this lawsuit).

That leaves only the second element, identity of the causes of action. In rendering judgment for Raila, the Appellate Court held that Agrella abused his discretion by not allowing Martin to testify and by placing inordinate weight on the

8

affidavits. R. 27 ¶ 30. The court further concluded that the Board's finding of notarial fraud by clear and convincing evidence was clearly erroneous. *Id.* This is the exact subject matter on which Raila now bases her due process claim. *Id.* ¶¶ 38-40. That Raila seeks different relief in this action is of no matter. "Illinois law does not test the identity of claims by looking for a unity of objectives and interests between the claims asserted. Instead, the court only considers whether or not the claims arise out of a single group of operative facts." *Girot v. Mun. Officers Electoral Bd. of City of Braidwood*, 2006 WL 59393, at *5 (N.D. Ill. Jan. 5, 2006) (citing *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998)); *see also Rose*, 815 F.3d at 375 ("[Plaintiff's] addition of a § 1983 claim in his federal action does not change the analysis; it is merely a different theory of recovery arising from the same facts and circumstances that gave rise to the state action."). Because Raila's claim concerns the same facts considered in the state court review, identity of the causes of action exists.

However, even if the elements of claim preclusion are met, federal courts "accord preclusive effect to a state court judgment only if the plaintiff had a 'full and fair opportunity' to litigate his claims in the prior action." *Rose*, 815 F.3d at 376. "So long as [Plaintiff] could have joined [her] federal claims with the administrative appeal of the Board's decision, then [she] had a full and fair opportunity to litigate." *Garcia*, 360 F.3d at 639. Here, Raila could have asserted her due process challenge during the administrative appeal. *See Rose*, 815 F.3d at 375 ("state courts may consider constitutional challenges when reviewing election board decisions."); *Garcia*,

9

360 F.3d at 637, 644. Because Raila had a full and fair opportunity to litigate and the elements of res judicata are otherwise satisfied, her due process claim is barred.

## II. First and Fourteenth Amendment Right to Vote and Right of Association

In Count II, Plaintiffs allege that their rights to vote and freely associate were violated when the Cook County Board and the Chicago Board of Commissioners mailed notices, hung wall posters, posted a Facebook video, bought newspaper advertisements, and sent text messages to election judges stating that votes for Raila would not count. *Id.* ¶¶ 42-44.

It would seem as though res judicata also precludes a significant portion of this claim. The notices and posters were mailed with the Circuit Court's express approval, and the Appellate Court denied Raila's motion to prevent their distribution. The Circuit Court then denied Raila's motion for remedial relief based on the Defendants' actions to inform voters that she had been removed from the ballot after the Appellate Court's reversal. It thus appears that a final judgment was rendered on the same group of facts at issue in Count II. And for the same reasons discussed as to Count I, the identity of the parties' element is also met. Nevertheless, based solely on the allegations in the complaint, and in the absence of briefing, the Court cannot fully discern whether Raila had a full and fair opportunity to litigate her federal claims asserted in Count II in the underlying proceedings. And at least some of the conduct alleged in Count II occurred after the rulings of the Circuit Court and Appellate Court and thus could not have been litigated. As such, the Court declines to decide Count II on the grounds of claim preclusion.

However, Count II (and Count I for that matter) still fails because Plaintiffs do not state a claim upon which relief may be granted. In response to Defendants' motion to dismiss, Plaintiffs rely exclusively on *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970). In *Briscoe*, the Seventh Circuit held that the Chicago Board of Election Commissioners violated the due process rights of candidates and voters who signed their nominating petitions when it decided for the first time to enforce a statutory anti-duplication rule and to require a signer's signature to include his or her middle initial in order to be counted. 435 F.2d at 1055. In so holding, the court explained that "[a]n agency may be bound by its own established custom and practice as well as by its formal regulations. The Board may not deviate from such prior rules of decision on the applicability of a fundamental directive without announcing in advance its change in policy." *Id.* Or put another way, "the Constitution prohibits agency deviations so great that individuals cannot anticipate them." *Johnson v. Cook Cnty. Officers Electoral Bd.*, 680 F. Supp. 1229, 1236 (N.D. Ill. 1988) (citing *Briscoe*). Drawing on this language, Plaintiffs contend that "there were profound agency deviations that Plaintiff could not have reasonably anticipated." R. 24 at 7. But in *Briscoe*, the plaintiffs challenged specific provisions of the Illinois Election Code. *Briscoe*, 435 F.2d at 1054 ("At the center of the controversy lies the Board's interpretation and application of two basic provisions of the Illinois Election Code."). Here, Plaintiffs fail to identify a single statute, protocol, or rule from which the Defendants deviated. The conclusory statement that "agency deviations befell the

11

Plaintiff" is insufficient to state a plausible claim that a constitutional violated occurred. R. 24 at 7.

Moreover, to the extent Count II concerns Defendants' failure to abide by the Appellate Court's decision, the claim also fails. The complaint alleges that the wrong notices were sent to polling locations, that election authorities failed to remove them from election supply boxes, and that the Chicago Board's text message gave erroneous instructions to the election judges. But election irregularities only implicate section 1983 "when there 'is '*willful* conduct which undermines the organic processes by which candidates are elected.'" *Bodine v. Elkhart Cnty. Election Bd.*, 788 F.2d 1270, 1272 (7th Cir. 1986) (quoting *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975)). The complaint contains no allegations that Defendants willfully ignored the Appellate Court's decision to undermine the election; rather, it appears the Appellate Court's reversal just six days before the election triggered the resultant confusion and errors. Indeed, the complaint states that election officials acknowledged these mistakes, and Plaintiffs do not contest Defendants' contention that these actions were inadvertent. R. 20 at 12. Therefore, Plaintiffs have failed to state a claim under section 1983.

For the same reasons stated above, the Court also *sua sponte* dismisses the complaint against the Chicago Defendants. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) ("*Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading.").

12

Because the parties did not address res judicata, and in an abundance of caution, the Court dismisses both Counts I and II without prejudice. If Plaintiffs believe they can cure the deficiencies identified consistent with Rule 11 obligations, they may move for leave to file an amended complaint by July 8, 2020. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies. Should Plaintiffs choose to file an amended complaint, they must <u>clearly</u> describe the parties and the nature of their claims, and identify the specific statutes and/or protocols from which they allege the Defendants deviated.

## Conclusion

For the reasons stated above, the Court grants the Cook County Defendants' motion to dismiss. R. 19. The claims against the Cook County Defendants are dismissed without prejudice. The Court also *sua sponte* dismisses the complaint against the Chicago Defendants without prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 8, 2020